IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MAMACITA, INC., a New Jersey corporation,<br><br>          Plaintiff,<br><br>  v.<br><br>COLBORNE ACQUISITION COMPANY, LLC, d/b/a COLBORNE FOODBOTICS, LLC, an Illinois limited liability company, RICHARD HOSKINS, III, LINDA HOSKINS, RICHARD HOSKINS, IV, LYSA HOSKINS, and HOSKINS PROPERTY, LLC, a Delaware corporation,<br><br>          Defendants. | Case No. 10 C 6861 |

**COLBORNE ACQUISITION COMPANY, LLC'S**
**MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS**

Defendant Colborne Acquisition Company, LLC, d/b/a Colborne Foodbotics, LLC ("CAC"), by and through its undersigned attorneys, hereby submits its Memorandum in Support of its Motion to Dismiss, pursuant to Rules 12(b)(6), 12(b)(7) and 9(b) of the Federal Rules of Civil Procedure, and in support states as follows:

**INTRODUCTION**

Plaintiff purports to state claims for successor liability (Count I), fraud in fact (Count III), and fraud in law (Count IV) against CAC. CAC[1] is a limited liability company created in May 2009 (Complaint at ¶9) which purchased assets from Lake Forest Bank at a public sale held on May 19, 2009 pursuant to the Illinois UCC. (*Id*. at ¶40). Those assets had been owned by Colborne Corporation prior to Lake Forest Bank's foreclosure as a result of a default by Colborne Corporation of its indebtedness to Lake Forest Bank. (*Id*. at ¶¶36-37; Exhibits A and B to the Complaint). Plaintiff was given written notice of the UCC sale, and sent two

---

[1] Plaintiff refers throughout the Complaint to "Colborne #1" and "Colborne #2" when referring to Colborne Corporation and Colborne Acquisition Company, LLC (hereinafter, "CAC"). This naming convention is inaccurate and misleading. As Plaintiff admits, Colborne Corporation and CAC are separate entities—one a corporation and one an LLC—formed on different dates and owned by different people. (*See* Complaint at ¶¶2, 9 and 61).

representatives to the sale itself. (*Id*. at ¶¶37, 41). Plaintiff chose not to bid on the assets at the public sale and took no action to halt the sale. (*Id*. at ¶42). Critically, Plaintiff admits that none of the owners of Colborne Corporation have any ownership interest in CAC. (*Id*. at ¶61)[2]. Now, having (1) been provided written notice of the public sale; (2) attending that sale; (3) choosing not to bid on the assets; (4) and admitting that the winning bidder—CAC—is not owned in any way by anyone affiliated with Colborne Corporation, Plaintiff seeks to hold CAC liable for a judgment entered against Colborne Corporation via the theories of successor liability and fraud. For the reasons provided below, Plaintiff's claims against CAC should be dismissed with prejudice.

## **STANDARDS**

### A. Rule 12(b)(6)

Under Rule 12(b)(6), a court must dismiss a plaintiff's claim if it does not include sufficient facts to state a claim to relief that is plausible on its face. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009). In considering a motion to dismiss, a court must accept a plaintiff's allegations as true and view them, along with any reasonable inferences drawn from them, in the light most favorable to the plaintiff. *Id.*

### B. Rule 12(b)(7)

Rule 12(b)(7) provides for dismissal of an action where a litigant fails to join a necessary party under Rule 19. Fed. R. Civ. P. 12(b)(7). In ruling on a motion to dismiss for failure to name a necessary party, a court must accept as true the allegations of the complaint, and may consider extrinsic evidence. *Davis Cos. v. Emerald Casino, Inc.*, 268 F.3d 477, 479 n.2 (7th Cir. 2001). The moving party bears the burden of showing that a party must be joined for just adjudication. *Ploog v. Home Side Lending, Inc.*, 209 F. Supp. 2d 863, 873 (N.D. Ill. 2002).

---

[2] Plaintiff styled its Complaint with 54 initial numbered paragraphs, followed by five separate counts. In each Count, Plaintiff re-numbered the paragraphs beginning with ¶55. This results, however, in five (5) separate ¶56's, ¶57's, etc. Put another way, ¶61 of Count I is different than ¶61 of Counts II, III, IV and V. This numbering system violates Rule 10(b); to remedy this confusion, references to "¶61," for instance, will relate to the ¶61 in Count I; all references to paragraphs in all other Counts will be referred to as "¶61 of Count II" or "¶61 of Count III."

**C. Rule 9(b).**

Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.Civ.Pro. 9(b). A cause of action may be dismissed for failing to plead fraud or mistake with particularity. *See Windy City Metal Fabricators & Supply, Inc. v. CIT Technology Financing Services, Inc.*, 536 F.3d 663,669 (7th Cir. 2008).

**I. PLAINTIFF'S CLAIM OF SUCCESSOR LIABILITY SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.**

In Count I, Plaintiff purports to state a claim for "successor liability" against CAC. The general rule for successor liability in Illinois is that when one corporation sells its assets to another corporation, the successor corporation does not become liable for the debts and liabilities of the seller merely by reason of succession. *Vernon v. Schuster*, 179 Ill. 2d 338, 344-45 (1997); *see also Meyers v. Putzmeister, Inc.*, 232 Ill. App. 3d 419, 422, 596 N.E.2d 754, 755 (1st Dist. 1992). Illinois does, however, recognize four exceptions to the general rule of nonliability for successors: where (1) there is an express or implied agreement of assumption; (2) the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) the purchaser is merely a continuation of the seller; or (4) the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id.*

In the instant case, Plaintiff appears to claim, in "kitchen-sink" style, that CAC is liable under all four exceptions. (*See* Complaint at ¶59 ("[CAC] has expressly agreed to assume the liabilities of [Colborne Corporation]"); at ¶58 ("From the early 2000s through May 19, 2009, the Hoskins Family controlled the business operations and management of [Colborne Corporation]. From May 19, 2009 through the present, the Hoskins Family has controlled the business operations and management of [CAC]"); at ¶57 ("After May 19, 2009, [Colborne Corporation's] business enterprise has substantially continued through [CAC], including continuity of: management, employees, customers, deposits, contracts, addresses, lease, phone number, general business location, general business operations the Hoskins Family' [sic] control, lender, line of credit and assets"); and at ¶56 ("the pretextual UCC sale was for the fraudulent purpose of

escaping [Colborne Corporation's] obligations, including the judgment.")). Taking all Plaintiff's factual allegations as true for purposes of this motion to dismiss, Plaintiff fails to state a claim for successor liability under all four claimed exceptions. Each exception is addressed in turn, below.

### 1. "Express or Implied Assumption" Exception.

Plaintiff alleges that CAC "has expressly agreed to assume the liabilities of [Colborne Corporation]." (Complaint at ¶59). In support, Plaintiff cites to UCC financing statements filed by Tennessee Commerce Bank.[3] Plaintiff fails to state a claim for successor liability under the "express assumption" exception for three reasons. First, the financing statements do not contain an assumption—either explicit or implicit—of any debt owed to Plaintiff. Even were the financing statements to be evidence of assumption of a debt owed Tennessee Commerce Bank, they do not reflect an agreement to assume any debt owed Plaintiff. To apply the "express or implied" assumption exception, the agreement of assumption logically must relate directly to the party seeking assumption. Second, the financing statements attached to the Complaint relate to separate indebtedness: an original security interest perfected by Tennessee Commerce Bank relating to Colborne Corporation, and a subsequent security interest perfected by Tennessee Commerce Bank relating to CAC. Third and finally, by admitting that the UCC sale was conducted pursuant to Section 9-610 of the Illinois UCC, Plaintiff admits that a third-party purchaser of assets at auction takes free and clear of any liability. In sum, merely attaching the financing statements to the Complaint is insufficient to state a claim for successor liability pursuant to the "express assumption" exception, and thus Count I should be dismissed for failure to state a claim.

### 2. "Consolidation or Merger" Exception

It is unclear from the face of the Complaint whether Plaintiff intended to plead the "consolidation or merger" exception. Specifically, the only allegation which could even arguably support that exception is found in Paragraph 58 of Count I: "From the early 2000s

---

[3] Plaintiff's citations to the exhibits are incorrect. The relevant UCC financing statements are Exhibits C, D, E and F, and not Exhibits A, B and C, as stated in Paragraph 59 of the Complaint.

through May 19, 2009, the Hoskins Family controlled the business operations and management of [Colborne Corporation]. From May 19, 2009 through the present, the Hoskins Family has controlled the business operations and management of [CAC]." In an abundance of caution, CAC will address the "consolidation or merger" exception, and demonstrate that Plaintiff fails to state a claim for successor liability under this exception.

A *de facto* or *de jure* consolidation or merger may occur so as to give rise to successor liability only when the following are present: (1) there is a continuity of the business enterprise between seller and buyer, including continuity of management, employees, location, and assets; (2) there is a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer; (3) the seller ceases operations and dissolves as soon as possible after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the seller's business. *State ex rel. Donahue v. Perkins & Will Architects, Inc.*, 90 Ill. App. 3d 349, 45 Ill. Dec. 696, 413 N.E.2d 29; *Freeman v. White Way Sign & Maintenance Co.*, 82 Ill. App. 3d 884, 38 Ill. Dec. 264, 403 N.E.2d 495 (1st Dist. 1980).

Illinois courts have held that the most important factor in determining whether a *de facto* or *de jure* merger has occurred is the identity of the ownership of the new and former corporations. *Nilsson v. Continental Mach. Mfg. Co.*, 251, Ill. App. 3d 415, 418, 621 N.E.2d 1032 (2nd Dist. 1993), *citing Nguyen v. Johnson Machine & Press Corp.*, 104 Ill. App. 3d 1141, 1143, 433 N.E.2d 1104 (1st Dist. 1982). Without identity of ownership between the old and the new entities, there can be no successor liability predicated upon this exception. *Id*.

This Court need go no further than Plaintiff's own allegation, made in Paragraph 61 of the Complaint. Plaintiff alleges as follows: "On information and belief, the Hoskins Family does not have an ownership interest in [CAC]." (Complaint at ¶61). To be clear: Plaintiff admits that the Hoskins Family has no ownership interest in CAC. Thus, Plaintiffs cannot allege the "most important factor" for the exception. By making the allegation in Paragraph 61, Plaintiff has pled itself out of the "consolidation or merger" exception, and thus Count I should be dismissed for failure to state a claim pursuant to Rule 12(b)(6).

### 3. "Continuation" Exception.

Under Illinois law, the "continuation" exception applies "when the purchasing corporation is merely a continuation or reincorporation of the selling corporation." *Vernon v. Schuster*, 179 Ill. 2d 338, 344, 688 N.E.2d 1172, 1175 (1997). In other words, the purchasing corporation must maintain the same or similar management and ownership, but merely wear different clothes. *Id.* Thus, the underlying theory of this exception is that a corporation should not be allowed to escape liability if it goes through a mere change in form, without a significant change in substance. *Id.* at 346. Evidence of continuity of ownership is necessary to assert liability under the continuation exception. *Id.* at 346-48.

In the instant case, Plaintiff again pleads itself out of the continuation exception through its admission, made in Paragraph 61, that the Hoskins Family has no ownership interest in CAC. Again, Plaintiff cannot allege the critical factor needed for application of the exception. Plaintiff's admission that no continuity of ownership exists between Colborne Corporation and CAC requires dismissal of Count I for failure to state a claim under the "continuation" exception pursuant to Rule 12(b)(6).

### 4. "Fraudulent Purpose" Exception.

The fourth and final recognized exception to the general rule of successor liability is that the transaction was made for the fraudulent purpose of escaping liability for the seller's obligations. *Vernon*, at 345. There is scant case law in Illinois explaining what constitutes a "fraudulent purpose" for the purpose of imposing liability upon a successor. Instead, courts look to the Illinois Fraudulent Transfer Act (the "IFTA") and its case law for guidance in determining whether a conveyance was made 'with actual intent to hinder, delay, or defraud any creditor.'" *Davila v. Magna Holding Co.*, 2000 WL 263690 at *10 (N.D. Ill. February 28, 2000). The heightened pleading requirements of Rule 9(b) do not, however, apply to a claim for successor liability brought under the "fraudulent purpose" exception. *Kruse v. Aamed, Inc.*, 1997 WL 102528 at *4 (N.D. Ill. March 4, 1997) (unpublished).

IFTA lists "badges of fraud" which, when present in sufficient number, may support an inference of actual fraudulent intent. *Id.* Those "badges" are as follows:

(1) The transfer or obligation was to an insider;
(2) The debtor retained possession or control of the property transferred after the transfer;
(3) Whether the transfer or obligation was disclosed or concealed;
(4) Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;
(5) The transfer was of substantially all the debtor's assets;
(6) The debtor absconded;
(7) The debtor removed or concealed assets;
(8) The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;
(9) The debtor was insolvent or became insolvent shortly after the transfer was made or obligation was incurred;
(10) The transferred occurred shortly before or shortly after a substantial debt was incurred; and
(11) The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b)(1)-(11).

These enumerated factors are merely considerations. *Lindholm v. Holtz*, 221 Ill. App. 3d 330, 334, 581 N.E.2d 860, 863 (2nd Dist. 1991). When these "badges of fraud" are present in sufficient number, it may give rise to an inference or presumption of fraud. *Kaibab Indus., Inc. v. Family Ready Homes, Inc.*, 80 Ill. App. 3d 782, 786, 372 N.E.2d 139, 142 (3rd Dist. 1978).

In the instant case, and again taking Plaintiff's factual allegations as true for purposes of this motion, Plaintiff fails to plead the existence of the vast majority of the enumerated "badges of fraud." We will address each "badge" below.

### a. The transfer was made to an insider.

Plaintiff admits that the first badge—that the transfer or obligation was made to an insider—is not present. Plaintiff alleges that CAC is a separate limited liability company that was organized on May 13, 2009. (Complaint at ¶9). Moreover, Plaintiff admits that "None of [CAC's] members are citizens of New Jersey." (*Id*). Because this allegation was not made "upon information and belief," Plaintiff had to know the identity and residence of each of CAC's four members, and hence must have known that no member of the Hoskins Family is a member of CAC. Finally, Plaintiff's admission in Paragraph 61 that the Hoskins Family has no

ownership interest in CAC is an admission that CAC was not an insider of Colborne Corporation.

### b. The debtor retained possession or control of the property.

The second badge of fraud—that the debtor retained possession or control of the property after the transfer—again is admittedly not present. Plaintiff's admission that the Hoskins Family has no ownership interest in CAC is conclusive. Plaintiff cannot save its claim by alleging that the Hoskins Family somehow retained control of the property; Plaintiff fails to allege how a party may control an entity without owning an interest in same.

### c. Whether the transfer was disclosed or concealed.

The third badge of fraud—whether the transfer was disclosed or concealed—weighs heavily in CAC's favor. Lake Forest Bank provided full disclosure to Plaintiff of the UCC sale. As Plaintiff admits, it was provided written notice of the UCC sale. (Complaint at ¶37). Moreover, two of Plaintiff's representatives, Jon Mangel and Robert Markoff, attended the UCC in person on May 19, 2009. (*Id*. at ¶41). Plaintiff could have made a bid at the UCC sale, but it chose not to—CAC was the only bidder. (*Id*. at ¶42).

### d. The debtor absconded.

The fourth badge of fraud also weighs heavily in CAC's favor. Plaintiff admits that the UCC sale took place in plain sight of Plaintiff, with written notice given and the opportunity to attend and bid on the assets. (*Id*. at ¶¶37, 41-42). Moreover, after securing the winning bid in the UCC sale, neither CAC nor its members attempted to leave the jurisdiction or otherwise conceal the nature of the transaction.

### e. The debtor removed or concealed assets.

Again, this badge of fraud weighs strongly in CAC's favor. Plaintiff admits that it was provided written notice of the UCC sale via a "Notification of Disposition of Collateral By Public Sale," attached to the Complaint at Exhibit A. In that Notification, Lake Forest Bank clearly identifies and discloses all of the collateral to be sold, in Paragraphs (a) and (b) of that document. Plaintiff does not allege that Colborne Corporation, Lake Forest Bank or CAC ever

removed or concealed assets; to the contrary, Plaintiff admits that it received written notice listing all of the assets of Colborne Corporation. (*Id*. at ¶37).

### f. The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred.

This badge of fraud also is admittedly not present. Plaintiff admits that CAC bid $1,300,000 at the UCC sale. (Complaint at ¶44). Plaintiff also admits that CAC is now responsible under a loan agreement entered into between CAC and Lake Forest Bank whereby CAC is obligated to repay $1,300,000 in indebtedness. (*Id*. at ¶45). Thus, Plaintiff admits that CAC provided substantial consideration through its winning bid at the UCC sale.

### g. The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

This badge of fraud is not present in the instant case because, just as in the first badge of fraud, Plaintiff admits that CAC is not an insider of Colborne Corporation. (Complaint at ¶61).

The only badges of fraud alleged to exist by Plaintiff are that the debtor had been sued prior to the transfer, the transfer was for substantially all of the debtor's assets, and the debtor was insolvent shortly after the transfer was made. Each of those badges, however, does not support a claim for fraud. That the transfer was for substantially all of Colborne Corporation's assets is due to the fact that Lake Forest Bank foreclosed upon and owned all of Colborne Corporation's assets as a precondition to the UCC sale. That Colborne Corporation became insolvent after the UCC sale merely reflects that Lake Forest Bank was entitled to—and did— sell all of foreclosed-upon assets. In fact, common sense dictates that all or almost all debtors are insolvent at the time of a UCC sale—that is the reason the debtor was foreclosed upon in the first instance. Finally, that the debtor had been sued or threatened with suit prior to the transfer is hardly noteworthy given that the underlying indebtedness that gave rise to the UCC sale, *i.e.*, the interest of Lake Forest Bank, existed long before Plaintiff filed its case against Colborne Corporation in New Jersey state court. In other words, the filing of the New Jersey lawsuit and the subsequent litigation had no effect on Lake Forest Bank's ability to foreclose upon Colborne

9

Corporation's assets. Simply put, Lake Forest Bank's interest in the assets is superior to any after-acquired judgment won by Plaintiff.

Because Plaintiff fails to enumerate "badges of fraud" sufficient to support application of the "fraudulent purpose" exception, Count I should be dismissed pursuant to Rule 12(b)(6).

## II. COUNTS III (FRAUD IN FACT) AND IV (FRAUD IN LAW) SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(6) FOR FAILURE TO STATE A CLAIM.

### A. CAC Is Not The "Debtor" Under Either Sections 5(a)(1) Or 6(a) Of The IFTA.

In Count III, Plaintiff purports to state a claim against CAC for fraud in fact pursuant to Section 5(a)(1) of the IFTA. (Complaint at ¶15). In Count IV, Plaintiff purports to state a claim against CAC for fraud in law pursuant to Section 6(a) of the IFTA. (*Id.* at ¶17). Both Sections 5a(1) and 6(a) provide that claims must be brought against a debtor. Section 5(a)(1) of the IFTA provides as follows: "A transfer made or obligation incurred by a <u>debtor</u> is fraudulent as to a creditor whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, <u>if the debtor made the transfer or incurred the obligation</u> . . . with actual intent to hinder, delay, or defraud any creditor of the debtor." 740 ILCS 160/5(a)(1) (emphasis added). Section 6(a) of the IFTA provides as follows:

> A transfer made or obligation incurred by a <u>debtor</u> is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred <u>if the debtor made the transfer or incurred the obligation</u> without receiving a reasonably equivalent value in exchange for the transfer or obligation <u>and the debtor was insolvent at that time</u> or the debtor became insolvent as a result of the transfer or obligation." 740 ILCS 160/6(a) (emphasis added).

Counts III and IV are brought against CAC. Plaintiff admits, however, that CAC is not the debtor. Instead, Plaintiff alleges that Colborne Corporation is the debtor: "Mamacita is a judgment creditor of Colborne Corporation." (Complaint at p. 1). Moreover, CAC could not be the debtor – as Plaintiff admits, CAC was only formed on May 13, 2009 (Complaint at ¶9) and the judgment creating the alleged debt was adjudicated on September 2, 2008. (Complaint at ¶21). Plaintiff alleges that <u>Colborne Corporation</u>: "transferred its assets to [CAC]"

10

(Complaint at ¶56 of Count IV); "became insolvent at the time of the transfer" (*Id.* at ¶57 of Count IV); and "received no consideration" (*Id.* at ¶58 of Count IV). Thus, Plaintiff's own allegations demonstrate that CAC is not and cannot be the "debtor" for purposes of a claim under Sections 5(a)(1) or 6(a) of the IFTA. Because CAC is not the "debtor" under Sections 5(a)(1) or 6(a) of the Act, Plaintiff fails to state a claim and thus Counts III and IV should be dismissed pursuant to Rule 12(b)(6).

### III. COUNTS III (FRAUD IN FACT) AND IV (FRAUD IN LAW) SHOULD BE DISMISSED PURSUANT TO RULE 9(b) FOR FAILURE TO PLEAD FRAUD WITH PARTICULARITY.

Rule 9(b) provides that "in all averments of fraud or mistake, the circumstances construing fraud or mistake, shall be stated with particularity. Fed. R. Civ. P. 9(b). The "circumstances of fraud or mistake include the identity of the person who made the misrepresentation, the time, place and content of misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *General Electric Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). Rule 9(b) requires that a plaintiff provide the "who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990).

Plaintiff purports to state two claims against CAC based upon alleged fraudulent transfers: a claim for fraud in fact (Count III) and a claim for fraud in law (Count IV). Both claims are subject to the heightened pleading requirements of Rule 9(b) for fraud claims. *See*, *e.g.*, *General Electric Cap. Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078-79 (7th Cir. 1997) (applying Rule 9(b) to claims made pursuant to IFTA, 740 ILCS 160/1, *et seq.*). Both claims brought by Plaintiff fail to meet those heightened pleadings requirements, and thus should be dismissed pursuant to Rules 9(b) and 12(b)(6).

The Seventh Circuit's decision in *General Electrical Capital Corp. v. Lease Resolution Corp.* specifically outlines the elements needed to comply with Rule 9(b) when attempting to state a claim under IFTA. In *General Electric Capital*, the Seventh Circuit held that a plaintiff asserting a claim under IFTA must plead: (1) an allegation of jurisdiction; (2) a statement of

11

the date and the conditions under which the defendant became indebted to the plaintiff; (3) a statement that the defendant owes the plaintiff the amount; (4) a description of the events surrounding the defendant's conveyance of property to the transfer recipient for the purpose of defrauding the plaintiff; and (5) the plaintiff's demand of the court. *Id.* at 1079-80.

In the instant case, Plaintiff fails to allege the fourth requirement, *i.e.*, a description of the events surrounding Lake Forest Bank's conveyance of property to CAC for the purpose of defrauding Plaintiff. Plaintiff fails to allege the "who, what, when, where and how" of the allegedly fraudulent transfer. Specifically, Plaintiff fails to allege the identity of the person or persons affiliated with CAC who were involved in the alleged fraud. Plaintiff fails to allege when and where CAC committed the allegedly fraudulent acts. Instead, Plaintiff states, in a conclusory manner, that the Hoskins Family colluded with CAC and Lake Forest Bank to defraud Plaintiff. Specifically, Plaintiff alleges: "In the days and weeks preceding May 19, 2009, [Colborne Corporation], the Hoskins Family, [CAC] and Lake Forest Bank negotiated a deal whereby Lake Forest Bank agreed to finance [CAC's] purchase of [Colborne Corporation's] assets." (Complaint at ¶45). No further detail is given, such as the actual dates of the scheme, the participants, the location of any meetings or discussions, or any other detail. Plaintiffs conclude with the following: "The UCC sale was conducted for the sole purpose of avoiding payment of [Plaintiff's] judgment." (*Id.* at ¶50). This type of "group pleading" has repeatedly held to be insufficient under Rule 9(b). *See, e.g.*, *Sears v. Likens*, 912 F.2d 889, 893 (7th Cir. 1990); *Ackerman v. Mut. Life Ins. Co.*, 172 F.3d 467, 469 (7th Cir. 1999). Because Counts III and IV fail to contain the particularity required by Rule 9(b), those Counts should be dismissed as a matter of law.

### IV. THE COMPLAINT SHOULD BE DISMISSED PURSUANT TO RULE 12(b)(7) FOR FAILURE TO JOIN A NECESSARY PARTY.

Plaintiff's central theory is that "to avoid paying Mamacita, Richard Hoskins, III, his wife, Linda Hoskins, and their children, Richard Hoskins, IV and Lysa Hoskins . . . *and their Bank* orchestrated a collusive UCC sale to create the appearance that the assets of [Colborne Corporation] were auctioned to the public and placed out of the reach of Mamacita." (Complaint

at p. 1, "Summary of Claims") (emphasis added). The "Bank" allegedly involved in this collusive scheme is Lake Forest Bank. (Complaint at ¶¶23-54). Despite identifying Lake Forest Bank as a member of the alleged fraudulent scheme, Plaintiff fails to name Lake Forest Bank as a defendant. This omission is especially glaring in light of Plaintiff's prayer for relief. In that prayer for relief, Plaintiff asks for a number of elements of relief, including avoidance, attachment and execution of the assets. Each element of relief necessarily implicates the interests of Lake Forest Bank, and thus Lake Forest Bank[4] is a necessary and indispensable party. As will be shown below, failure to name Lake Forest Bank as a defendant is fatal to Plaintiff's claims under Rule 12(b)(7).

A motion under Rule 12(b)(7) seeks dismissal based on the failure to join a necessary party. *See* Fed. R. Civ. P. 12(b)(7). To evaluate a Rule 12(b)(7) motion, a court must engage in a two-step inquiry. First, the court must determine whether a party is a necessary party. Fed. R. Civ. P. 19(a); *Thomas v. U.S.*, 189 F.3d 662, 667 (7th Cir. 1999). To make that determination, the court must consider: "(1) whether complete relief can be accorded among the parties to the lawsuit without joinder; (2) whether the absent person's ability to protect its interest in the subject-matter of the suit will be impaired; and (3) whether any existing parties might be subjected to a substantial risk of multiple or inconsistent obligations unless the absent person joins the suit." *Id.* at 667. Second, if based on those factors it concludes that the party should, but cannot be, included in the action, the court will then decide whether the litigation can proceed at all in the party's absence. *Id*. If the court finds that "there is no way to structure a judgment in the absence of the party that will protect both the party's own rights and the rights of the existing litigants, the unavailable party is regarded as 'indispensable' and the action is subject to dismissal upon proper motion under [Rule]12(b)(7)." *Id*.

---

[4] Curiously, Plaintiff also asks this Court to enter judgment against Colborne Corporation, despite the fact that Colborne Corporation is not named as a defendant. (*See* Complaint at ¶16, subsections b and e of the Prayer for Relief). To the extent Plaintiff seeks relief against Colborne Corporation, at a minimum, that entity must be named as a party.

Lake Forest Bank is a necessary party pursuant to Rule 19. First, complete relief cannot be accorded amongst the parties without joinder of Lake Forest Bank. Plaintiff seeks, *inter alia*, the following from this Court: (1) an Order from this Court "avoiding the transfer of [Colborne Corporation's] assets to [CAC];" (2) "an attachment or other provisional remedy against the assets transferred . . .;" (3) "an injunction against further disposition by the Hoskins Property, LLC, R-3, and Linda Hoskins, or all, of the assets transferred . . .;" (4) appointment of a receiver "to take charge of the assets transferred . . .;" and (5) "an order levying execution on the assets transferred . . . ." (Complaint at p. 20). Plaintiff's prayer for relief omits, however, that Lake Forest Bank foreclosed on these very assets on April 22, 2009. (*See Id.* at ¶36; Exhibit B). How can this Court give Plaintiff complete relief, *e.g.*, attachment and/or execution of the assets, when to do so would be to infringe upon the rights of a non-party? Put another way, complete relief for the Plaintiff would ineluctably result in destruction of Lake Forest Bank's perfected security interest in those very same assets.

Second, without the presence of Lake Forest Bank, its ability to protect its interest in the subject matter of the suit will be impaired. The subject matter of the suit is the assets of Colborne Corporation that were foreclosed upon and then purchased by CAC at public auction. Even though Lake Forest Bank is not a named defendant, Plaintiff seeks to destroy Lake Forest Bank's security interest in those assets. Moreover, Plaintiff seeks to sell the assets in order to satisfy the judgment against Colborne Corporation, notwithstanding the fact that Lake Forest Bank's interest in the assets is both fully perfected and has priority over Plaintiff's judgment. Simply put, Plaintiff seeks an Order from this Court resolving ownership of the assets, but without allowing Lake Forest Bank to be heard.

Third, CAC may be subjected to a substantial risk of multiple or inconsistent obligations unless Lake Forest Bank joins the suit. Plaintiff alleges that CAC entered into a loan agreement with Lake Forest Bank. (Complaint at ¶45). Plaintiff also alleges that Lake Forest Bank recorded a financing statement against CAC, asserting a security interest against the assets purchased by CAC at the public auction. (*Id.* at ¶46). At the same time, however, Plaintiff asks

this Court to enter an Order avoiding the sale, attaching the assets, and/or appointing a receiver to take charge of the assets. (*Id*. at p. 20). In this way, Plaintiff creates the possibility of multiple and/or inconsistent obligations amongst the parties. The assets purchased at auction by CAC simultaneously would be at risk in this suit and also pledged as collateral in an agreement with a non-party. Were this Court to award relief to Plaintiff in this case, it may jeopardize the rights of CAC and Lake Forest Bank in their loan agreement.

The second step of the analysis is to determine whether the litigation can proceed at all in the party's absence. As stated above, Plaintiff seeks recovery of the assets foreclosed upon and sold by Lake Forest Bank as the central element of the Complaint. Without joining Lake Forest Bank as a party, and relief afforded Plaintiff may be illusory and would subject the parties to multiple and inconsistent obligations.

## CONCLUSION

For all the reasons stated herein, Defendant Colborne Acquisition Company, LLC, respectfully requests that this Court dismiss Counts I, III and IV of the Complaint with prejudice, and for such and other and further relief as this court deems necessary and just.

Dated: December 10, 2010

Respectfully submitted,

**COLBORNE ACQUISITION COMPANY, LLC**

By: s/Brett Nolan
One of Its Attorneys

Brett Nolan (ARDC # 6256972)
bnolan@shefskylaw.com
SHEFSKY & FROELICH LTD.
111 East Wacker Drive
Suite 2800
Chicago, Illinois 60601
Telephone: (312) 527-4000
Facsimile: (312) 527-4000
1168193_1.DOC