IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MAMACITA, INC.,

                    Plaintiff,

          v.                              Case No. 10 C 6861

COLBORNE ACQUISITION CO.,
LLC., RICHARD HOPKINS III,                Hon. Harry D. Leinenweber
LINDA HOPKINS, RICHARD HOPKINS
IV, LYSA HOPKINS and HOPKINS
PROPERTY, LLC.,

                    Defendants.

## MEMORANDUM OPINION AND ORDER

Mamacita, Inc. ("Mamacita"), a judgment creditor of Colborne Corp. ("Colborne"), filed the instant lawsuit against its alleged successor company, Colborne Acquisition Co. ("CAC") and various members of the Hoskins family as well as Hoskins Property, LLC (collectively, the "Hoskins Defendants"). CAC and the Hoskins Defendants filed separate Motions to Dismiss. For the reasons stated herein, CAC's Motion to Dismiss is denied. The Hoskins Defendants' Motion to Dismiss is granted in part and denied in part.

## I.  BACKGROUND

The following allegations are taken from Mamacita's Complaint and presumed to be true for the purposes of a motion to dismiss. Mamacita is a New Jersey corporation that produces and sells frozen

food.  Colborne was an Illinois corporation that manufactured food equipment.  It was owned by Richard Hoskins III ("Hoskins III") and his two children, Richard Hoskins IV ("Hoskins IV") and Lysa Hoskins ("Lysa").  Hoskins III was the majority shareholder, with a 90 percent stake in the business, while his children were each 5 percent shareholders.  Linda Hoskins ("Linda") is the spouse of Hoskins III and the mother of Lysa and Hoskins IV.  She is the sole member of the remaining Defendant, Hoskins Property.  Hoskins Property is a Delaware limited liability company that owned the commercial real estate in Lake Forest where Colborne was operated ("the Ballard Road property").

In 2005, Mamacita and Colborne entered into an agreement whereby Colborne was to manufacture a stainless steel machine that produced "dough discos" to make empanadas.  Colborne was to sell the machine to a finance company, and Mamacita agreed to lease and purchase the machine from that company.  However, Mamacita was dissatisfied with the machine and filed suit against Colborne alleging breach of contract, breach of warranties, and consumer fraud in the Superior Court of Camden County, New Jersey.  On September 2, 2008, Mamacita obtained a judgment of $538,167.08 plus costs.  On December 10, 2008, Mamacita registered the New Jersey judgment in the Nineteenth Judicial Circuit in Lake County, Ill. Colborne's failure to satisfy that judgment led to the instant lawsuit.

According to the Complaint, the Hoskins family recruited their business associates to form a new entity, CAC, which they planned would obtain all of Colborne's assets in a collusive UCC sale meant to avoid Mamacita's judgment. After the UCC sale, the Hoskins family planned to retain control and possession of Colborne's assets and continue the same business operation in the name of CAC.

The Complaint alleges that in April 2009, Lake Forest Bank, a lender to both Colborne and the Hoskins family, sent Colborne a notice of default, with the alleged default used to justify the UCC sale. The default was a non-monetary default related to Mamacita's judgment against Colborne. Lake Forest Bank and Colborne gave Mamacita notice of the sale, but did not serve notice on Colborne's other secured creditors.

In the weeks prior to the UCC sale, the Complaint alleges, Colborne, the Hoskins family, CAC, and Lake Forest Bank negotiated a deal whereby Lake Forest Bank agreed to finance CAC's purchase of Colborne's assets. CAC and the bank entered into a loan agreement in which Lake Forest Bank loaned CAC $1.3 million for the purchase of Colborne's assets. CAC did not contribute new capital. In effect, the Complaint alleges, CAC purchased Colborne's assets directly from Colborne and assumed its obligations to Lake Forest Bank.

On May 19, 2009, Lake Forest Bank conducted the UCC sale of Colborne's assets. Representatives of Colborne, CAC, Lake Forest

Bank, and Mamacita were the only parties present at the sale. CAC was the only bidder, and its bid of $1.3 million was immediately accepted by Lake Forest Bank and consented to by Hoskins III on behalf of Colborne. At that point, according to the Complaint, the appraised value of Colborne's assets was approximately $7.5 million.

Two days after the UCC sale, on May 21, 2009, Lake Forest Bank recorded a financing statement against CAC, asserting a security interest in all of CAC's assets acquired from Colborne at the UCC sale. The Complaint alleges that the UCC sale generated no proceeds to pay creditors, and that at the sale, Lake Forest Bank received the same financial obligations from the same borrowers and guarantors secured by the same collateral as prior to the sale. The sale stripped Colborne of its assets and placed them out of reach of Mamacita.

Mamacita brought the instant five-count Complaint. In Count I, Mamacita asks this Court to find CAC liable in successor liability for the New Jersey judgment against Colborne. Count II seeks to "pierce the corporate veil" and hold the individual Hoskins family members who were shareholders in Colborne jointly and severally liable for the New Jersey judgment. Counts III and IV seek to hold CAC liable under Illinois' Uniform Fraudulent Transfer Act (the "IUFTA") for fraud in fact and fraud in law, respectively. In Count V, Mamacita seeks to hold the Hoskins

Defendants liable for fraud in fact and fraud in law under the IUFTA. The Defendants have separately moved to dismiss each of these counts on various grounds, so each motion will be discussed in turn. Additional facts related to the relevant counts will be discussed as necessary.

## II.  DISCUSSION

### A.  CAC's Motion to Dismiss

CAC moves to dismiss the counts in which it is named for failure to state a claim (Count I), failure to comply with the elevated pleading requirements of FED. R. CIV. P. 9(b) (Counts III and IV), and failure to name a necessary party (all counts).

### 1.  Count I: Successor Liability

First, CAC argues that Mamacita's "kitchen-sink" style pleading fails to state a claim for successor liability, so Count I should be dismissed pursuant to FED. R. CIV. P. 12(b). A motion to dismiss for failure to state a claim should be granted if the complaint fails to satisfy FED. R. CIV. P. 8's pleading requirement of "a short and plain statement of the claim showing that the pleader is entitled to relief." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must construe the complaint in the light most favorable to the plaintiff

and draw all inferences in its favor. *Justice v. Town of Cicero*, 577 F.3d 768, 771 (7th Cir. 2009).

This Court has jurisdiction over the instant suit on the basis of diversity, and the parties agree that Illinois law applies to Mamacita's claims. Under Illinois law, the general rule is that a business that purchases the assets of a corporation is not liable for the debts of that corporation. *Vernon v. Schuster*, 688 N.E.2d 1172, 1175 (Ill. 1997). This rule is meant to protect bona fide purchasers from unassumed liability and to ensure the fluidity of corporate assets. *Id.* However, there are four exceptions to this general rule of successor non-liability: (1) where there is an express or implied agreement of assumption; (2) where the transaction amounts to a consolidation or merger of the purchaser or seller corporation; (3) where the purchaser is merely a continuation of the seller; or (4) where the transaction is for the fraudulent purpose of escaping liability for the seller's obligations. *Id.* at 1175–76. As a preliminary matter, the parties agree that FED. R. CIV. P. 9(b)'s heightened pleading requirements do not apply to claims for successor liability. *Kruse v. Aamed, Inc.*, No. 96 C 5344, 1997 WL 102528, at *4 (N.D.Ill. March 4, 1997). Mamacita argues that it adequately pled the applicability of all four of these exceptions. In order to streamline the issues in the case, the Court will evaluate each of them.

*a.  Express or Implied Agreement*

In support of its argument that CAC expressly or impliedly agreed to assume the debts of Colborne, Mamacita alleges that CAC expressly assumed Colborne's secured debts to both Lake Forest Bank and Tennessee Commercial Bank.  It has attached to its Complaint the UCC financing statements supporting this allegation.  Mamacita contends that by expressly assuming these secured debts and participating in a "sham" UCC sale to acquire Colborne's assets for the purpose of defrauding Mamacita, CAC impliedly assumed Colborne's debt to Mamacita.

CAC contends that these financing statements, at best, show an agreement between CAC and the banks involved, not an agreement between CAC and Colborne Corp.  The Court agrees that Mamacita has not adequately alleged an implied or explicit assumption of the debt.  Although there is little Illinois case law interpreting this exception, Mamacita's theory — that by expressly assuming some debts, CAC has impliedly assumed them all — stretches the exception too far.

In *Vernon*, 688 N.E.2d at 1174, the buyer of a heating system brought suit against the seller's son, who had taken over the sole proprietorship after the death of his father.  The plaintiff alleged that the son failed to honor the warranty on the boiler. *Id.*  In dissent, Justice Bilandic argued that an allegation that defendant "succeed[ed] to the assets, rights, and *obligations*" of

his father's business should have been enough to allege successor liability under the explicit or implied agreement exception. *Id.* at 1179. Justice Bilandic noted that the defendant appeared to have assumed at least one obligation of his father's business, the lease on the location where it was operated, so it was arguable that the defendant had assumed other obligations as well. *Id.* However, the majority rejected that interpretation, finding plaintiff's complaint was insufficient to allege successor liability under any of the four exceptions. *Id.* at 1078.

Plaintiff's theory would stretch this exception beyond the narrow bounds set by the *Vernon* court. Further, Mamacita's theory of implied assumption based on the alleged "sham" UCC sale goes to the fourth exception to successor non-liability, not the first. As such, Plaintiff has not adequately pled the first exception to successor non-liability.

b. *"De Facto Merger" and "Mere Continuation" Exceptions*

A *de facto* merger occurs when: (1) there is a continuity of business enterprise between the seller and buyer, including continuity of management, employees, location, general business operations and assets; (2) there is a continuity of shareholders, in that shareholders of the seller become shareholders of the buyer; (3) the seller ceases operations and dissolves soon after the transaction; and (4) the buyer assumes those liabilities and obligations necessary for the uninterrupted continuation of the

seller's business.  *Steel Co. v. Morgan Marshall Indust., Inc.*, 662 N.E.2d 595, 599–600 (Ill. App. Ct. 1996).  The mere continuation exception applies when "the purchasing corporation is merely a continuation or reincarnation of the selling corporation." *Vernon*, 688 N.E.2d at 1176.  Although these exceptions differ, Illinois courts have held that they both hinge on a finding of common ownership in the new and former businesses. *Steel Co.*, 662 N.E.2d at 600.

That is the sticking point here, as Plaintiff admits the Hoskins family does not have an ownership interest in CAC, but contends that it controls the company regardless.  Pl.'s Compl. ¶ 61.  CAC argues that Mamacita has thus pled itself out of both these exceptions.  In arguing otherwise, Plaintiff points to *Steel Co.*, which it contends stands for the proposition that the required continuity of ownership can be found so long as the owner of the predecessor company controls the operations of the successor company.  In *Steel Co.*, creditors sought to recover from a successor company a debt owed to them to them by Par Steel.  *Steel Co.*, 662 N.E.2d at 597.  Par Steel went out of business, and a secured lender foreclosed and served it with notice of a public sale.  *Id.*  The secured lender then lent a newly formed company, Morgan Marshall, the funds to buy Par Steel's assets, and it did so.  *Id.*  Phillip Rosenbrand, the owner and sole shareholder of Par Steel, was the chief executive officer of Morgan Marshall, but

owned no stock in that company. *Id.* at 597–98. Rather, his wife was the majority shareholder of Morgan Marshall, leading the court to comment that "[t]he facts are unique." *Id.* at 600. The appeals court found that there was a continuity of shareholders even though Rosenbrand owned no stock in Morgan Marshall, and as such allowed the claim of successor liability to go forward. *Id.* at 600. In so holding, the court noted, "We cannot allow the law to be circumvented by an individual exerting control through his spouse." *Id.*

This Court has found no Illinois cases extending the *Steel Co.* exception beyond its unique facts. The limitations that Illinois law imposes on this exception are illustrated by *In re King & Associates*, 295 B.R. 246 (Bankr. N.D. Ill. 2003). There, the bankruptcy trustee sought to impose successor liability on a company established to steer business away from the debtor corporation. *Id.* at 267. At the time of the bankruptcy, one brother, Joe, owned all the stock of the bankrupt company and was its president, while the other brother, Earl, was its vice president and general counsel. *Id.* at 280. Earl owned all the stock in the new corporation. *Id.* at 263. While finding that the brothers had breached their fiduciary duty to the debtor corporation by taking business opportunities from it, the bankruptcy court declined to impose successor liability based on the mere continuation or *de facto* merger theories. *Id.* at 280–81.

The court noted that the *Steel Co.* exception rested on the spousal relationship, particularly the theory that ownership of shares of stock by a spouse may be attributable to the other spouse in certain circumstances. *Id.* at 280. The court declined to extend the exception to the relationship between two brothers, even though the new company performed identical work for the same customers as the debtor corporation and operated from the same address with substantially the same employees. *Id.* The same reasoning applies in the instant case. Although Mamacita alleges that the Hoskins family recruited their business associates to form CAC and control it behind the scenes, this allegation is not enough to state a claim for successor liability under either the *de facto* merger or mere continuation exceptions.

### c. *Fraudulent Purpose Exception*

The final exception allowing successor liability requires that the Plaintiff show that the sale was made for the fraudulent purpose of escaping the seller's obligations. *Steel Co.*, 662 N.E.2d at 601. Because there is little Illinois case law dealing with this exception, courts look to several factors, or "badges of fraud," enumerated under Illinois' Uniform Fraudulent Transfer Act ("IUFTA") to determine whether a plaintiff has stated a claim under this exception. *Davila v. Magna Holding Co.*, No 97 C 1909, 2000 WL 263690, at *8 (N.D. Ill. Feb. 28, 2000). Nonetheless, the two legal theories are different, and the plaintiff need not show that

it can state a claim under the IUFTA in order to proceed on a theory of successor liability. *Id.*

The badges of fraud enumerated in the UFTA require courts to consider whether:

> (1) the transfer or obligation was to an insider; (2) the debtor retained possession or control of the property transferred after the transfer; (3) the transfer or obligation was disclosed or concealed; (4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit; (5) the transfer was of substantially all the debtor's assets; (6) the debtor absconded; (7) the debtor removed or concealed assets; (8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; (9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred; (10) the transfer occurred shortly before or shortly after a substantial debt was incurred; (11) the debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

740 ILCS 160/5(b)(1)-(11).

CAC contends that Mamacita has not pled the existence of enough of these badges to state a claim under the fraudulent purpose exception. For example, CAC argues, Mamacita has not pled that the transfer was to an insider because it acknowledges that the Hoskins family members are not members of CAC and do not have an ownership interest in it. CAC also notes that Mamacita received notice of the UCC sale, and that the debtor has not absconded.

Mamacita argues it has made sufficient allegations to raise an inference of fraud. It alleges that Colborne was sued before the transfer was made, that the transfer was substantially all of

Colborne's assets, and the value of consideration received was not reasonably equivalent to the value of assets transferred. Plaintiff also alleges that Colborne became insolvent after the transfer. Mamacita again likens the instant case to the allegations in *Steel Co.*, but this time it fares better in the comparison. The *Steel Co.* court found indicia of fraud where the creditor plaintiff alleged that the debtor corporation and its lender colluded to strip the debtor of its assets and place the assets in a new corporation, thereby "scraping" off general creditors and leaving both the lender and the debtor corporation in a better position than they would have been otherwise. *Steel Co.*, 662 N.E.2d at 599. Whether this amounted to fraud was a question of fact, the court held. *Id.* Mamacita's similar allegations here are a sufficient pleading of successor liability under the fraudulent purpose exception, so CAC's Motion to Dismiss Count I is denied.

### 2. Count III and IV: Violations of the IUFTA Against CAC

The IUFTA provides that a transfer of property "may be set aside as fraudulent if the transfer tends to hinder or defeat the rights of the grantor's creditor." *Regan v. Ivanelli*, 617 N.E.2d 808, 814 (Ill. App. Ct. 1993). In Counts III and IV, Mamacita alleges that CAC violated the IUFTA by committing, respectively, fraud in fact and fraud in law. 740 ILCS 160/5(a)(1); 740 ILCS 160/6(a).

- 13 -

First, CAC argues that these counts must be dismissed because CAC is not the "debtor" as that term is used in the IUFTA. Rather, the debtor is Colborne. Mamacita responds that under the IUFTA, it is entitled to sue CAC as a transferee. This is correct, as the statute specifically provides that judgment may be entered against "any subsequent transferee other than a good-faith transferee who took for value or from any subsequent transferee." 740 ILCS 160/9(b)(2).

CAC additionally argues that Mamacita has failed to meet the elevated pleading standards of Rule 9(b). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Mamacita responds that it "has gone to great lengths to allege every known factual detail."

A transfer that is fraudulent in fact is defined as:

(a)   A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:

(1)   with actual intent to hinder, delay, or defraud any creditor of the debtor.

740 ILCS 160/5(a)(1). In determining the defendant's intent, the court may consider the presence of the "badges of fraud" discussed in relation to Mamacita's claim of successor liability. 740 ILCS 160/5(b)(1)-(11). Here, Mamacita has pleaded the presence of

- 14 -

several of these badges:  that Mamacita had sued Colborne prior to the UCC sale; that Colborne transferred substantially all of its assets; that the consideration received in the sale was not reasonably equivalent to the value of the assets transferred; that Colborne was rendered insolvent at the time of the UCC sale; and that the sale occurred shortly after Colborne incurred a substantial debt to Mamacita.

In Count IV, Colborne alleges fraud in law, which is defined as:

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the debtor made the transfer or incurred the obligation without receiving a reasonably equivalent value in exchange for the transfer or obligation and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer or obligation.

740 ILCS 160/6(a).  In regard to this count, Mamacita alleges that after the UCC sale, Colborne failed to retain sufficient assets to pay the New Jersey judgment, and that Colborne received inadequate consideration in exchange for the transfer.

CAC argues these averments are insufficient because Mamacita failed to allege the identity of the persons affiliated with CAC who committed the allegedly fraudulent acts or when and where those acts occurred.  The type of pleading required to state a claim under the IUFTA is illustrated by *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074 (7th Cir. 1997), a case cited

by both sides.  There, the court cited with approval Form 13, which was formerly included in the Appendix of Forms, and which required, in relevant part, "a description of the events surrounding the defendant's conveyance of all his property to the transfer recipient for the purpose of defrauding and for delaying the collection of payment by the plaintiff."  *Id.* at 1079–80. Specifically, the form provided this example:  "Defendant C.D. on or about _____ conveyed all his property, real and personal [or specify and describe] to defendant E.F. for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness. . . ."  *Id.* at 1080 n.4.  Although the form is no longer in use, courts have approved this manner of pleading in fraudulent conveyance cases without requiring the level of detail demanded by CAC here.  For example, one court found the pleading of an IUFTA claim to be sufficient where the Plaintiff alleged three badges of fraud and gave a general outline of the scheme sufficient to alert the defendants as to their alleged role.  *Allstate Ins. Co. v. St. Anthony's Spine & Joint Inst.*, 06 C 7010, 2010 WL 3274283, at *2–3 (N.D. Ill. Aug. 17, 2010); *see also Bonar v. Ray*, 09 C 1185, 2010 WL 1050251, at *7 n. 7, 8 (C.D. Ill. March 17, 2010) (rejecting argument that plaintiff was required to detail the manner of control exercised by defendant "insider" in order to plead fraudulent conveyance claim).  As such, CAC's Motion to Dismiss Counts IV and V is denied.

### *3. Failure to Name Necessary Party: Lake Forest Bank*

CAC additionally moves to dismiss the Complaint pursuant to FED. R. CIV. P. 12(b)(7) on the grounds that Mamacita has failed to join a necessary party under FED. R. CIV. P. 19 — Lake Forest Bank.

CAC notes that Lake Forest Bank foreclosed on Colborne's assets and took a security interest in them. It contends the relief Mamacita seeks — avoidance of the transfer of Colborne's assets, attachment of the assets, or appointment of a receiver to take charge of the assets — would result in the destruction of that security interest. Without the presence of the bank, it will not be able to protect its interest in those assets, CAC argues. Mamacita responds that it is not seeking to invalidate Lake Forest Bank's security interest in the property, nor is it seeking any relief from the bank.

Dismissal under 12(b)(7) is "not the preferred outcome under the Rules." *Askew v. Sheriff of Cook County*, 568 F.3d 632, 634 (7th Cir. 2009). Rather, the court is to determine whether the absent party should be joined, and if so, order that the party be brought into the action. *Id.* at 635. In order to make that determination, the court must consider whether: (1) complete relief can be accorded among the parties to the lawsuit without joinder; (2) the absent person's ability to protect its interest in the subject-matter of the suit will be impaired; and (3) whether any existing parties might be subjected to a substantial risk of

- 17 -

multiple or inconsistent obligations unless the absent person joins the suit. *Thomas v. United States*, 189 F.3d 662, 667 (7th Cir. 1999)(citing FED. R. CIV. P. 19(a)). If the court concludes that the party should be joined but cannot be, it must then decide whether the case can proceed in the party's absence. *Thomas*, 189 F.3d at 667 (citing FED. R. CIV. P. 19(b)). If there is no way to structure a judgment that will protect both the absent party's own rights and the rights of the existing litigants, the case is subject to dismissal under FED. R. CIV. P. 12(b)(7). *Thomas,* 189 F.3d at 667. The burden is on the party bringing the Rule 12(b)(7) motion to show that joinder necessary under Rule 19. *Martin v. Local 147, Intern. Broth. of Painters and Allied Trades*, 775 F.Supp. 235, 236 (N.D. Ill. 1991). It may do so through affidavits of those having knowledge of those interests or other relevant extra-pleading evidence. *Id.*

Here, it is true that Mamacita's pleading of its IUFTA counts styles the transaction it is seeking to undo as a transfer of Colborne's assets to CAC, without mentioning Lake Forest Bank's foreclosure on those assets or its sale of them to CAC. *See* Pl.'s Compl. Count III, ¶ 64; Count IV, ¶ 59. However, the relief requested by Mamacita includes a money judgment against CAC, which would not implicate any rights of Lake Forest Bank and which would allow complete relief between the parties without joinder of the bank. *Cf. Burger King Corp. v. Am. Nat'l Bank & Trust Co. of*

*Chicago*, 119 F.R.D. 672, 677 (N.D. Ill. 1988) (noting general rule that in a suit against a transferor for wrongful transfer of property, the transferee is a necessary party if the relief sought requires a return of the property, but not if the action is for damages). The Court also notes that Lake Forest Bank has not attempted to intervene in this suit to protect any interest it might have in Colborne's assets, nor has CAC produced an affidavit from the bank explaining how its interests could be affected by the suit. As such, the Court denies CAC's Motion to Dismiss for failure to name a necessary party.

## B. The Hoskins Defendants' Motion to Dismiss

The Hoskins Defendants move to dismiss Counts II and V of Mamacita's Complaint for failure to state a claim that meets the pleading requirements of FED. R. CIV. P. 9(b) and for failure to name a necessary party pursuant to FED. R. CIV. P. 12(b)(7) — Colborne Corp.

### 1. Count II: Piercing the Corporate Veil

In Count II, Mamacita seeks to pierce the corporate veil of Colborne and hold its shareholders — Hoskins III, Hoskins IV and Lysa Hoskins — liable for the New Jersey judgment. The Hoskins Defendants argue that Mamacita has failed to state a claim for veil piercing because its pleading does not meet the standard of particularity required by FED. R. CIV. P. 9(b). Mamacita contends that its veil-piercing claim is subject only to the ordinary

pleading standards of FED. R. CIV. P. 8(b), but that if Rule 9(b)'s heightened standard applies, it has met that.

Piercing the corporate veil allows the Court to disregard the corporate form, which usually protects shareholders from personal liability for corporate debt, and hold the real party to the transaction liable. *New Freedom Mortg. Corp. v. C & R Mortg. Corp.*, 03 C 3027, 2004 WL 783206, at *8 (N.D. Ill. Jan. 15, 2004). Because the primary purpose of doing business as a corporation is to shield shareholders from such liability, "courts will pierce the corporate veil only reluctantly." *Fontana v. TLD Builders, Inc.*, 840 N.E.2d 767, 776 (Ill. App. Ct. 2005) (quoting *In re Estate of Wallen*, 633 N.E.2d 1350, 1357 (Ill. App. Ct. 1994)). A party seeking to pierce the corporate veil must show: (1) such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist; and (2) that circumstances exist such that adherence to the fiction of a separate corporate entity would sanction a fraud or promote injustice or inequitable consequences. *Fontana*, 840 N.E.2d at 776.

Here, the heightened pleading standards of Rule 9(b) apply. The Seventh Circuit has held that the rule applies to factual allegations of fraud, so a claim that is "premised upon a course of fraudulent conduct" implicates Rule 9(b). *Borsellino v. Goldman Sachs Grp., Inc.*, 477 F.3d 502, 507 (7th Cir. 2007). As such, aspects of a veil-piercing complaint that sound in fraud must be

pled with particularity. *Wachovia Sec., LLC v. Neuhauser*, 04
C 3082, 2004 WL 2526390, at * 11 (N.D. Ill. Nov. 5, 2004). Here,
Mamacita makes just such a claim, contending "[t]he Hoskins Family
knowingly participated in the fraudulent scheme perpetuated upon
Mamacita by collectively deciding to transfer corporate assets out
of Mamacita's reach." Pl.'s Compl. Count II, ¶ 58.

The question then becomes whether Mamacita has satisfied the
heightened pleading requirements of Rule 9(b). The Hoskins
Defendants contend that Mamacita has failed to meet this standard
because its allegations of fraud refer to the family members
collectively, rather than informing each of their individual role
in the alleged scheme. For example, in describing the alleged
collusion leading up to the UCC sale, Plaintiff alleges:

> In order to avoid application of Colborne #1's asset
> *[sic]* to satisfaction of the Judgment, the Hoskins Family
> recruited their business associates to form a new entity,
> Colborne #2, which they planned would obtain all of
> Colborne #1's assets in a collusive UCC sale. After the
> UCC sale, the Hoskins Family planned to retain control
> and possession of Colborne #1's assets and continue the
> same business operation of Colborne #1 under the name of
> Colborne #2.

Pl.'s Compl. ¶ 32. Similarly, Plaintiff contends:

> On May 19, 2009, the Hoskins Family and their business
> associates organized Colborne #2 [CAC] as an Illinois
> limited liability company. Colborne #2's business
> purpose was fourfold: 1.) obtain Colborne #1's assets;
> 2.) allow the Hoskins family to retain control of
> Colborne #1's management and possession of Colborne #1's
> assets, while operating as Colborne #2; 3.) avoid
> Colborne #1's obligation to satisfy the Judgment; and 4.)

allow the Hoskins Family to enjoy Colborne's cash flow and retain their pre-existing lifestyle.

Pl.'s Compl. ¶ 38.

Under Rule 9(b), a complaint should explain the "who, what, when, where and how" of a fraudulent scheme. *DiLeo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). Group pleading, such as that used by Mamacita here, is generally inappropriate. *Schaufenbuel v. Investforclosures Fin., LLC*, 09 C 1221, 2009 WL 3188222, at *4-5 (N.D. Ill. Sept. 30, 2009). Further, it is confusing in this case because although Linda Hoskins is included in Mamacita's definition of the "Hoskins family," she was not a shareholder of Colborne and is not a defendant in Count II. However, individualized information about the role of each defendant is not necessary when that information is uniquely within the defendants' knowledge. *Viacom v. Harbridge Merch. Servs.*, 20 F.3d 771, 778 n. 5; *see also P&P Marketing, Inc. v. Ditton*, 746 F.Supp. 1354, 1363 (holding that defendant spouses who controlled corporations were in a better position than plaintiff to know who committed alleged fraudulent acts.)

In its response, however, Mamacita indicates that its pleadings can be more specific. Mamacita contends that Hoskins III, Hoskins IV and Lysa Hoskins intentionally participated in the scheme to defraud Mamacita. As such, Count II is dismissed without prejudice, and Mamacita is given leave to replead within thirty (30) days.

## 2. *Count V: Fraud in Fact and Fraud in Law Against Hoskins Defendants*

In Count V, Mamacita alleges both fraud in fact and fraud in law under the IUFTA against Hoskins III, Linda Hoskins, and Hoskins Property, LLC. This count stems from Mamacita's contention that after Colborne incurred its debt to Mamacita, Hoskins III, on behalf of Colborne, and Linda, on behalf of Hoskins Property, colluded to increase the monthly rent on the Ballard Road property from $15,000 to $30,000. The doubling of the rent was for no consideration, and was meant to avoid payment of Mamacita's claim and allow Hoskins III and Linda to use the additional funds for their personal gain, the complaint alleges. Mamacita alleges that the rent increase ultimately resulted in the fraudulent transfer of $675,000 from Colborne to Hoskins Property, Hoskins III, and Linda.

The Hoskins Defendants attack this count on several grounds. First, they argue that Mamacita impermissibly lumped together its fraud in law and fraud in fact claims. FED. R. CIV. P. 10(b) provides that: "A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances. . . . If doing so would promote clarity, each claim founded on a separate transaction or occurrence - and each defense other than a denial - must be stated in a separate count or defense."

Although Mamacita's pleading is confusing, it ultimately does not matter because Mamacita cannot state a claim for fraud in law

against the Hoskins Defendants.  Here, there is no allegation that
Colborne was insolvent at the time of the rent increase or became
insolvent as a result of it, as is required to state a claim for
fraud in law.  *In re Edgewater Medical Center*, 373 B.R. 845,
853 (Bankr. N.D. Ill. 2007); *see* 740 ILCS 160/6(a).  Indeed,
Mamacita's Complaint alleges that Colborne was still meeting its
financial obligations to creditors through 2009, well after the
rent increase at issue in Count V.  Pl.'s Comp. ¶ 28.  As such, to
the extent Count V alleges a claim of fraud in law under 740
ILCS 160/5(a)(1), that claim is dismissed with prejudice.

The question then becomes whether Mamacita has sufficiently
stated a claim for fraud in fact under 740 ILCS 5(a)(1).  First,
the Hoskins Defendants argue that Hoskins III and Linda Hoskins
cannot be held personally liable because Colborne was the debtor
and Hoskins Property the alleged transferee.  However, Illinois law
permits a cause of action for fraud against corporate officers who
personally participate in fraud.  *Firstar Bank, N.A. v. Faul*, 00 C
4061, 2001 WL 1636430, at *6 (N.D. Ill. 2001) (citing *Citizens Sav.
and Loan Ass'n v. Fischer*, 214 N.E.2d 612, 616 (Ill. App. Ct.
1966)).  As such, Hoskins III and Linda Hoskins may be held liable
for their intentional actions as officers of those companies.

The Hoskins Defendants also argue that Mamacita has failed to
allege adequately an intent to defraud sufficient to sustain a
claim for fraud in fact.  Mamacita contends that Hoskins Property

LLC and Colborne intentionally colluded to defraud Mamacita by doubling Colborne's rent on the Ballard Road property. Mamacita alleges it has pled a number of badges of fraud: (1) that it sued Colborne prior to the rent increase; (2) that the rent increase was for no consideration; (3) that Colborne became insolvent after the transfer; and (4) that the transfer was all of Colborne's assets. However, as noted in regard to the fraud in law claim, other averments in the Complaint show that Colborne was not insolvent at the time of the rent increase and did not become insolvent because of it.

What we are left with then is an allegation that the rent increase was made for no consideration at a time when Colborne had been sued by Mamacita for breach of contract. While this may be a thin thread upon which to hang a claim, it is sufficient to survive a motion to dismiss. *See Shapo v. Engle*, 98 C 7909, 2000 WL 198435, at *3 (N.D. Ill. Feb. 11, 2000) (holding that there is no absolute combination or number of badges required to state a claim); *In re Spatz*, 222 B.R. 157, 168 (N.D. Ill. 1998) (noting that fraud in fact claim hinges on intent to defraud, and badges of fraud are merely useful to determining that intent).

### 3. Failure to Name Necessary Party: Colborne Corp.

The Hoskins Defendants argue that Colborne Corp. is a necessary party and seek dismissal under FED. R. CIV. P. 12(b)(7) if Colborne is not joined.

- 25 -

Preliminarily, Defendants note that Mamacita's prayers for relief seek a judgment against Colborne.  Mamacita responds that this is a scrivener's error and asks that Colborne be stricken from the prayers for relief.  The Hoskins Defendants also argue that because Colborne is the debtor corporation, it must be named in an action under the IUFTA.  However, Mamacita is correct that the IUFTA allows it to proceed not only against either the debtor or a transferee.  *See* 740 ILCS 160/9(b)(2).

Next, the Hoskins Defendants contend that Mamacita's failure to name Colborne will lead to a risk of inconsistent judgments because Plaintiff could seek to enforce the judgment against both Colborne and the Hoskins Defendants.  Mamacita responds that any relief it receives in this litigation will be credited against the amount of its judgment against Colborne.  Colborne retains no interest in its transferred assets, and the Hoskins Defendants have not met their burden to show that it is a necessary party under Rule 19.  As such, Mamacita's request to strike Colborne from its prayers for relief is granted, and the Hoskins Defendants' Motion to Dismiss for Failure to Join a Necessary Party is denied.

### III.  <u>CONCLUSION</u>

For the reasons stated herein, the Court rules as follows:

1.   CAC's Motion to Dismiss is denied.

2.   The Hoskins Defendants' Motion to Dismiss is granted in part.  Count II of the Complaint is dismissed without prejudice,

and Mamacita is given thirty (30) days from the date of this order to amend its pleadings to conform with FED. R. CIV. P. 9(b). To the extent Count V of the Complaint alleges fraud in law, it is dismissed with prejudice. The allegations of fraud in fact in Count V stand.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

**DATE:**     3/11/2011