**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| **MIRIAM R. STEIN, Not Individually, but Solely in Her Capacity as Trustee of the Estate of Cold 2005, Inc.,** | |
| **Plaintiff,** | **Case No. 10 C 6861** |
| v. | **Hon. Harry D. Leinenweber** |
| **COLBORNE ACQUISITION CO., LLC., RICHARD HOPKINS III, LINDA HOPKINS, RICHARD HOPKINS IV, LYSA HOPKINS and HOPKINS PROPERTY, LLC.,** | |
| **Defendants.** | |

## MEMORANDUM OPINION AND ORDER

Individual Defendants, Richard Hoskins, III, Richard Hoskins IV, and Lysa Hoskins (the "Three Hoskins"), bring this Motion to Dismiss Count II of the First Amended Complaint. This count seeks to pierce a corporate veil in an effort to collect a judgment that was entered in New Jersey state court against the family owned Colborne Corporation ("Colborne"), which is currently registered in Illinois. Colborne is now in bankruptcy so the Amended Complaint is now brought by the Bankruptcy Trustee, Miriam R. Stein. The Amended Count II seeks to correct a deficiency in the original Complaint (brought by the judgment creditor Mamacita) in which the original Count II was dismissed without prejudice. The Court's Memorandum Opinion and Order dated March 11, 2011

dismissed the original Count II for lack of specificity as required by Rule 9 (b) of the Federal Rules of Civil Procedure. The facts as alleged in the Complaint were extensively discussed in the earlier court ruling and will not be repeated here except as necessary to explain the court's current ruling. In addition to dismissing Count II, the Court in the previous ruling declined to dismiss Count I, seeking to establish successor liability on the part of Colborne Acquisition Co., LLC ("CAC"), Counts III and IV, alleging violations by CAC of the Illinois Uniform Fraudulent Transfer Act, and Count V, alleging Fraud in Fact against Hoskins III, Linda Hoskins and Hoskins Property, LLC.

The theory of Count II is that Hoskins III, IV and Lysa recruited business associates to form a new entity called Colborne Acquisition Co., LLC ("CAC"), to acquire all of the assets of the judgment debtor Colborne, now in bankruptcy, to avoid paying the Mamacita's judgment. In dismissing the original Count II, the court held that Mamacita had failed to satisfy the heightened pleading requirements of FED. R. CIV. P. 9(b), which applies to efforts to pierce the corporate veil. *Wachovia Sec., LLC v. Neuhauser*, 04 C 3082, 2004 WL 2526390, at *11 (N.D. Ill. Nov. 5, 2004). The familiar requirement of Rule 9(b) is that a complaint must explain the "who, what, when, where and how" of the fraudulent scheme. *Dileo v. Ernst & Young*, 901 F.2d 624, 626 (7th Cir. 1990). There are certain exceptions to this requirement, for

example, where individualized information of each defendant's role is uniquely within the defendants' knowledge and where, in the case of a bankruptcy, the necessary information is second hand and the records of the bankrupt corporation are in disarray. *Seidel v. Byron*, 405 BR. 277, 284 (Bankr. N.D. Ill. 2009). However, the Trustee must still provide sufficient information to give defendants an understanding of the claims against them. *Seidel v. Byron*, No. 05 C 6698, 2008 WL 4411541, at *2 (N.D. Ill. 2008).

The original deficiency in Count II was that Mamacita lumped all of the Hoskins family together even though, for example, Linda, Richard III's wife, was not even a shareholder of Colborne. The amended Count II now deletes Linda as a defendant. The Three Hoskins, however, claim that the amended Count II essentially makes the same error by substituting "Richard III, Richard IV, and Lysa" for "Hoskins family." However, the Amended Complaint does more than that. Starting in Paragraph 37 it alleges that the Three Hoskins shareholders of Colborne recruited business associates to form CAC with the intent to obtain all of Colborne's assets to avoid paying Mamacita's judgment. The mechanism to accomplish this was to use a "collusive UCC sale" to acquire all of Colborne's assets through CAC and to continue Colborne's business operations through a judgment-free CAC which they would own. Although not a model of clarity, the scheme alleged in Amended Count II involved Lake Forest Bank, Colborne's lender, declaring a default by

Colborne due to the unpaid outstanding Mamacita judgment and conducting a sham UCC sale of all of Colborne's assets to CAC. The Three Hoskins, using the CAC, and their other personal assets, borrowed the amount owed to Lake Forest Bank by Colborne to purchase all of the assets of Colborne at the UCC sale on May 19, 2009 for $1,300,000.00. The value of the assets of Colborne at the time of the sale was estimated by Lake Forest Bank to be $7,500,000. Lake Forest Bank then recorded a Financing Statement asserting an interest in all of CAC's assets and Colborne was left with no assets.

As evidence of merging the separate personalities of Corporation and shareholder, the amended Count II alleges in Paragraph 61 that the Three Hoskins used Colborne's assets to pay for their personal credit cards, which had been used for personal expenses such as purchasing season tickets to professional football games and for family travel expenses. Paragraph 62 alleges that the Three Hoskins took assets out of Colborne for use by other corporations they controlled without any consideration. The same paragraph alleges that Richard III executed a lease, without any consideration, doubling the rent charged to Colborne by Hoskins Property, LLC, another family-owned corporation, of which he was manager. All of these actions were alleged to have been carried out with the intent to make Colborne judgment-proof. These actions

were alleged to have been carried out during the period commencing January 1, 2005 and May 19, 2009.

In order to pierce the corporate veil a party must show: (1) such a unity of interest and ownership that the separate personalities of the corporation and individual no longer exist; and (2) that circumstances exist such that adherence to the fiction of a separate corporate entity would sanction a fraud or promote injustice or inequitable consequences. *Fontana v. TLD Builders*, Inc., 840 N.E. 2d 767, 781-82 (Ill. App. Ct., 2005). Here the Three Hoskins were each shareholders of Colborne. Each is alleged to have participated in the sham UCC Sale and Assets Purchase. Each is alleged to have used the corporate assets for his own purposes. Each is alleged to have had the intent to make Colborne judgment-proof, a fraudulent or at least unjust consequence. While Paragraph 61 does not include specific dates of payments, the allegations regarding the collusive UCC sale does. In the Court's judgment Count II is sufficiently specific to satisfy Rule 9(b) and put the Hoskins on notice of what there must defend against.

Accordingly the Motion to Dismiss Count II of the Amended Complaint is denied.

**IT IS SO ORDERED.**

                                             _____
                                             Harry D. Leinenweber, Judge
                                             United States District Court

**DATE:** 7/27/2011